UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

ASHLEY HOLT,

    Plaintiff,

v.

COMMUNITY ACTION COUNCIL FOR
LEXINGTON-FAYETTE, BOURBON,
HARRISON, AND NICHOLAS
COUNTIES, INC.,

    Defendant.

Civil No. 5:22-cv-00236-GFVT-MAS

**MEMORANDUM OPINION
&
ORDER**

*** *** *** ***

In 2021, the Community Action Council hired Ashley Holt as its inaugural Diversity, Equity, and Inclusion Officer. Less than a year later, they fired her. Then, she sued for discrimination. For the reasons that follow, the Community Action Council's Motion for Summary Judgment **[R. 50]** is **DENIED**.

**I**

The Community Action Council (CAC) is a nonprofit organization working to ameliorate poverty. [R. 1 at 1; R. 50-1 at 2–3.] In 2021, CAC hired Plaintiff Holt as its first Diversity, Equity, and Inclusion (DEI) Officer. [R. 1 at 2.] On March 11, 2022—while Ms. Holt was on medical leave due to kidney failure—CAC fired her. [R. 1 at 3; R. 50-1 at 9; R. 29 at 7.] Holt claims she was terminated because of her disability status and associated medical leave. [*See generally* R. 1.] The CAC disagrees, pointing instead to Holt's allegedly unprofessional demeanor and negative attitude. [R. 50-1.]

Ms. Holt brings claims for discrimination, retaliation, and failure to accommodate under the Americans with Disabilities Act (ADA) and the Kentucky Civil Rights Act (KCRA). [R. 1.] Now, Defendant CAC urges summary judgment in its favor as to each claim. [R. 50.]

## II

Under Rule 56, summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). A fact's materiality is determined by the substantive law, and a dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). "[T]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). "Instead, 'the non-moving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.'" *J.B-K.-1 v. Sec'y of Ky. Cabinet for Health & Fam. Servs.*, 462 F. Supp. 3d 724, 731 (E.D. Ky. 2020), *aff'd sub nom. J. B-K. by E.B. v. Sec'y of Ky. Cabinet for Health & Fam. Servs.*, 48 F.4th 721 (6th Cir. 2022) (quoting *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001)).

Summary judgment is inappropriate where there is a genuine conflict "in the evidence, with affirmative support on both sides, and where the question is which witness to believe." *Dawson v. Dorman*, 528 F. App'x 450, 452 (6th Cir. 2013). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. . . . The evidence of the non-movant is to be believed, and all

justifiable inferences are to be drawn in his favor." *Morales v. Am. Honda Motor Co.*, 71 F.3d 531, 535 (6th Cir. 1995) (quoting *Liberty Lobby*, 477 U.S. at 255).

The ADA prohibits employment discrimination against qualified individuals "on the basis of disability[.]" 42 U.S.C. § 12112(a). The KCRA's prohibition on disability discrimination tracks the contours of the ADA. *See* Ky. Rev Stat. Ann. § 344.040; *see also Koch v. Thames Healthcare Grp., LLC*, 855 F. App'x 254, 257–58 (6th Cir. 2021) ("The language of the KCRA mirrors that of the ADA; consequently, claims brought under the KCRA are interpreted consistently with the standards developed under the ADA." (quoting *Bryson v. Regis Corp.*, 498 F.3d 561, 574 (6th Cir. 2007))); *but cf. Krueger v. Home Depot USA, Inc.*, 674 F. App'x 490, 494 (6th Cir. 2017) ("[T]he Kentucky legislature adopted the language in the KCRA in 1992 and intended it to reflect the language of the ADA at that time, not the subsequent amendments.").

### A

First, CAC urges summary judgment as to Holt's failure to accommodate claim. [R. 50-1 at 13.] In particular, it asserts that (1) Holt was not qualified for her DEI Officer position; and (2) even if she was, CAC accommodated her appropriately. *Id.* at 13–17. The Court is not persuaded.

Failing to "reasonabl[y] accommodat[e]" a qualified employee's disability amounts to prohibited discrimination under the ADA. 42 U.S.C. § 12112(b)(5)(A); *see King v. Steward Trumbull Mem'l Hosp., Inc.*, 30 F.4th 551, 561 (6th Cir. 2022) ("'[M]edical leave can constitute a reasonable accommodation' under certain circumstances.") (internal citation omitted). To make out a prima facie case, Ms. Holt must show that "(1) she was disabled within the meaning of the ADA; (2) she was otherwise qualified for her position, with or without reasonable

3

accommodation; (3) [CAC] knew or had reason to know about her disability; (4) she requested an accommodation; and (5) [CAC] failed to provide the necessary accommodation." *Brumley v. United Parcel Serv., Inc.*, 909 F.3d 834, 839 (6th Cir. 2018). The "qualification" element requires a showing that Holt could "perform the essential functions of" her DEI Officer role "with or without reasonable accommodation[.]" 42 U.S.C. § 12111(8). Courts assessing whether an employee was "qualified" give "consideration" "to the employer's judgment as to what functions of a job are essential[.]" § 12111(8).

### 1

First, Plaintiff Holt raises a genuine dispute about whether she was qualified. CAC represents that Ms. Holt's primary role as DEI Officer involved "develop[ing] and implement[ing] a comprehensive diversity and equity strategy[.]" [R. 50-1 at 3.] In addition, she was expected to "build[] a 'better culture for the organization.'" *Id.* Consistent with that objective, Holt was required to "create a positive work environment[,]" make CAC a "workplace of choice," rehabilitate the reputation of the human resources (HR) department, and "deter gossip and negativity in the workplace." *Id.* at 3–4.

According to CAC, Ms. Holt contravened these aims and therefore was not "qualified" for the position within the meaning of the ADA. [R. 50-1 at 17.] In support of this contention, CAC cites various complaints about Ms. Holt. First, Ms. Price (CAC's Executive Director) received several complaints about Holt's "unprofessional" and "negative" communication style; one complaint alleged that she "blurted out [']this is []bullshit'" after exiting a meeting. *Id.* at 5–7. According to CAC, other managers also received reports that Holt was rude, demeaning, demanding, and unprofessional. [*See* R. 50-12 at 9 (describing complaints that Holt was "rude and nasty" to coworkers)]; [R. 50-7 at 13 (relaying additional complaints and stating "[s]taff

were threatening to leave because they did not want to work with Ashley").] One colleague even requested that her desk be moved away from Holt's because Holt was "loud" and "upset" on multiple occasions. [R. 50-10 at 10.]

Ms. Holt rejects this characterization, citing a pay raise she received in late 2021 after excelling on a project. [R. 29-5.] She also produces both of her performance reviews: one "good" and the other "satisfactory." [R. 29-2; R. 29-10.] The "satisfactory" review, dated just two days before Holt's firing, suggests Ms. Holt needs to improve her attitude and communication style.[1] [R. 29-10.] But Holt did not score low enough on either review to trigger disciplinary action such as counseling or probation. [*See* R. 29-10 at 5.] Finally, CAC acknowledges that Holt's substantive DEI Officer work was satisfactory. [R. 50-7 at 32 (stating that the firing "didn't have anything to do with her work performance or her work product.").]

Holt at least raises a genuine dispute. "At the prima facie stage, a court should focus on a plaintiff's *objective* qualifications to determine whether he or she is qualified for the relevant job." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 575 (6th Cir. 2003) (emphasis in original); *see Chavez v. Waterford Sch. Dist.*, 720 F. Supp. 2d 845, 854 (E.D. Mich. 2010) ("[A] plaintiff need only to demonstrate that she possesses the basic skills necessary for performance of the job."); *see also Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1298 (D.C. Cir. 1998) ("[C]ourts traditionally treat explanations that rely heavily on subjective considerations with caution."). Considering the objective barometers of Holt's performance in the light most favorable to her, she raises a genuine dispute about whether she had the basic skills for the job.

---

[1] Ms. Holt also provides affidavits from two HR employees at CAC, who state that they worked with Ms. Holt, got along with her, found her to get along with co-workers, and perceived her to be a good employee. [R. 29-3; R. 29-4.] Holt further points to deposition testimony from Rosha Williams (another HR member) that she got along with Holt, perceived Holt to be a good employee, and found Holt to get along with co-workers "for the most part." [R. 29-15 at 1–3.]

*See Equal Emp. Opportunity Comm'n v. Blue Sky Vision, LLC*, No. 1:20-CV-285, 2021 WL 5535848, at *5–6 (W.D. Mich. Nov. 1, 2021) (allegedly "rude, disrespectful, and unprofessional" behavior by purportedly unqualified employee did not warrant summary judgment for employer, particularly when employer did "not challenge [employee's] education, expertise or experience").

**2**

Next, CAC asserts that it cannot be liable for failing to accommodate when it consistently approved Holt's requests for medical leave. [R. 50-1 at 10, 13.] Still, Holt avers that—despite these ostensible grants—she was deprived of her leave as a practical matter because she was fired while on leave.[2] [R. 29 at 23–24; R. 29-8 at 10.]

A reasonable jury could agree. Indeed, common sense dictates that "one of the benefits of medical leave is that the employee will still have a job when she comes back from an approved leave." *King v. Steward Trumbull Mem'l Hosp., Inc.*, 30 F.4th 551, 567 (6th Cir. 2022). Moreover, a nominal grant of leave is not necessarily a bulwark against a failure to accommodate claim. *See id.* at 568 ("Accepting [Holt's] version of events, [CAC] did not give her all of the benefits of non-FMLA leave and, therefore, failed to provide a reasonable accommodation."); *see also Terre v. Hopson*, 708 F. App'x 221, 227 (6th Cir. 2017) (recognizing that a termination occurring while an employee is on leave may "nullify[]" the accommodation, thereby rendering the leave "ineffective"). Because "the benefits of an approved leave[] include[] reinstatement[,]" the Court will deny CAC's summary judgment request. *King*, 30 F.4th at 568.

---

[2] CAC does not dispute that it terminated Holt when she was on leave. [R. 50-1 at 11.]

**B**

Next, CAC asserts that it cannot be liable for disability discrimination when (1) Ms. Holt was unqualified and (2) she was fired for a lawful reason. [R. 50-1 at 13–19.]

**1**

> A prima facie case of disability discrimination under the ADA requires that a plaintiff show: 1) he or she is disabled; 2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced.

*Keogh v. Concentra Health Servs., Inc.*, 752 F. App'x 316, 324 (6th Cir. 2018) (quoting *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 703 (6th Cir. 2008)).

The familiar *McDonnell Douglas* framework applies to circumstantial discrimination claims under the ADA. *See Hedrick v. W. Rsrv. Care Sys.*, 355 F.3d 444, 453 (6th Cir. 2004); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under *McDonnell Douglas*, "the employee has the initial burden of establishing h[er] prima facie case; if [s]he does so, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions; finally, the employee has the burden of rebutting the employer's proffered reasons by showing them to be pretextual." *Garant v. Norfolk S. Ry. Co.*, 453 F. Supp. 3d 1027, 1036 (E.D. Mich. 2020) (quoting *Demyanovich v. Cadon Plating & Coatings, LLC*, 747 F.3d 419, 427 (6th Cir. 2014)). She can "establish pretext by showing that the employer's proffered reasons (1) have no basis in fact; (2) did not actually motivate the action; or (3) were insufficient to warrant the action." *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 285 (6th Cir. 2012). "On a motion for summary judgment, a district court considers whether there is sufficient evidence to create a genuine dispute at each stage of the *McDonnell Douglas* inquiry." *Cline v. Cath. Diocese of Toledo*, 206 F.3d 651, 661 (6th Cir. 2000).

7

2

First, CAC asserts that Ms. Holt was unqualified. Having already found a genuine dispute about her qualifications, the Court rejects that argument. CAC does not contest the remaining elements of the prima facie case; instead, it presents a non-discriminatory reason for the firing. Holt, in turn, challenges that reason as pretextual. Because Holt raises a genuine dispute "at each stage of the *McDonnell Douglas* inquiry," summary judgment would be inappropriate. *Id.*

a

CAC cites a "final straw" conversation as the reason for Holt's firing. [R. 50-1 at 8.] The parties to that conversation were Ms. Holt and Rosha Williams (an HR employee). But the details of that conversation are murky. According to Defendant, Ms. Holt spoke "negatively" and "gossiped" during the exchange. Apparently, the discussion was overheard by Ms. Pinkston, another HR officer. [R. 50-1 at 7–8.] Ms. Price (CAC's executive director) summoned Pinkston to a meeting, during which Ms. Price and Ms. Rice (CAC's HR Director) asked her about the substance of the conversation. [R. 50-10 at 14.] At the meeting, Pinkston reported that she thought the conversation was "negative." *Id.*

Despite that characterization, Pinkston cannot remember what the conversation was about. *Id.* She does not recall whether she reported the conversation to management, and she can't remember anything about the conversation other than the fact that it was "negative." *Id.* at 14–15.

Rosha Williams tells a different story. She testified that she did not find the conversation to involve any negativity or gossip. [*See* R. 50-13 at 7 ("**Q.** [] But your opinion was Ms. Holt had not engaged in and participated in any negativity or gossip, correct? **A.**

8

Correct.").] And when summoned to a meeting about the conversation, Williams states that she told Price and Rice the same. *See id.* ("**A.** I didn't perceive that as gossip. . . . **Q.** Okay. And did you tell Sharon Price and Bridgett Rice that? **A.** Yes. **Q.** That you didn't think that this conversation that you'd had with Ms. Holt was gossip in any way? **A.** Correct.").

These contested facts are a poor match for summary judgment. *See Doe v. Snyder*, 449 F. Supp. 3d 719, 727 (E.D. Mich. 2020) ("The court may not make credibility determinations or weigh the evidence presented in support or opposition to a motion for summary judgment; only the finder of fact can make such determinations."); *Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 651 (6th Cir. 2015) (district court's "subjective determination" that employee made "rude" and "disrespectful" statements was inappropriate on summary judgment review). Because Holt has raised a genuine dispute about whether CAC's proffered "final straw" was based in fact, the Court will deny CAC's Motion.

### b

CAC resists this conclusion, asserting that the "honest belief rule" forecloses liability when it relied on extant complaints about Holt. [R. 50-1 at 18.] "[A]s long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect." *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001); *see also id.* ("An employer has an honest belief in its reason for discharging an employee where the employer reasonably relied 'on the particularized facts that were before it at the time the decision was made.'") (internal citation omitted). "An employer's invocation of the honest belief rule does not automatically shield it, because the employee must be afforded the opportunity to produce evidence to the contrary, such as an error on the part of the employer that

9

is 'too obvious to be unintentional.'" *Seeger*, 681 F.3d at 286 (quoting *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir.1998)).  Here, because CAC appears to have known about Williams's account of the conversation before the firing, there is a genuine dispute about whether CAC committed an error "'too obvious to be unintentional.'" *Id.*  Accordingly, the honest belief rule does not demand summary dismissal in this context.

C

Finally, CAC asserts that Ms. Holt lacks evidence of ADA retaliation.  To make out a prima facie case, Holt must show that "(1) [s]he engaged in activity protected by the ADA; (2) [CAC] knew of this exercise of h[er] protected rights; (3) [CAC] subsequently took an employment action adverse to [Holt] . . . ; and (4) there was a causal connection between the protected activity and the adverse employment action." *Chaniott v. DCI Donor Servs., Inc.*, 481 F. Supp. 3d 712, 727 (M.D. Tenn. 2020).  *See Anderson v. ProCopy Techs., Inc.*, 23 F. Supp. 3d 880, 892 (S.D. Ohio 2014) ("Where a plaintiff relies on circumstantial evidence of retaliation, the familiar burden-shifting evidentiary framework applies.").  "'[R]equests for accommodation are protected acts' for the purposes of an ADA retaliation claim." *Chaniott*, 481 F. Supp. 3d at 727 (internal citation omitted).

In support of its Motion, CAC avers that (1) Price did not know Holt was on leave when she fired Holt and (2) there was no causal connection between Holt's leave and termination.  [R. 50-1 at 19–21.]  Again, the Court is not persuaded.  First, Holt testified that she at some point verbally informed Price and Rice of her "medical leave for [] dialysis[.]"  [R. 29-8 at 8.]  She also produces an email she sent to Rice reminding Rice of her medical leave on March 10–11, 2022.  [R. 29-9.]  Thus, she easily raises a genuine dispute as to whether CAC knew about her

10

leave.  Second, because the Court has already found a genuine dispute about the question of pretext, Holt may proceed to trial on the retaliation claim.

### III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that Defendant's Motion for Summary Judgment **[R. 50]** is **DENIED.**

This the 12th day of June, 2024.

Gregory F. Van Tatenhove
United States District Judge